1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7
MATTHEW NATHANSON,

Case No. 23-cv-02211-DMR

8
Plaintiff,

9
v.

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

10
TRUEBECK CONSTRUCTION, INC.,

Re: Dkt. No. 20

11
Defendant.

12          Plaintiff Matthew Nathanson filed this discrimination action in San Mateo County Superior

13   Court against his employer, Truebeck Construction, Inc. ("Truebeck") and Does 1-50.  Truebeck

14   removed the case, asserting that this court has federal question jurisdiction because Section 301 of

15   the Labor Management Relations Act ("LMRA") preempts Nathanson's claims.  Nathanson now

16   moves to remand the case to state court.  [Docket No. 20.]  This matter is suitable for

17   determination without oral argument.  Civil L.R. 7-1(b).  For the following reasons, the motion to

18   remand is granted.

19   **I.      BACKGROUND**

20          **A.      Plaintiff's Allegations**

21          In his complaint, Nathanson alleges that he was employed by Truebeck as a Jobsite Safety

22   Manager from May 11, 2020 to December 22, 2022, when he alleges he was constructively or

23   wrongfully terminated.  [Docket No. 1-2 (Madonna A. Herman Decl., May 5, 2023) ¶ 1, Ex. 1

24   (Complaint) ¶ 10.]

25          Nathanson suffered an injury to his knee on January 21, 2021, while working for Truebeck.

26   Compl. ¶ 14.  After taking some doctor-recommended time off to receive treatment, Nathanson

27   went back to work in February 2021.  *Id.* ¶¶ 15-16.  Because his knee was still causing him pain,

28   Nathanson took additional time off in May 2021.  *Id.* ¶ 16-17.  He underwent knee surgery and

United States District Court
Northern District of California

was on work disability during his recovery. *Id.* ¶ 17. In December 2021, Nathanson was able to

return to work to perform "light dut[ies]." *Id.* ¶ 18. Throughout 2022, however, Truebeck told

Nathanson that the company did not have any light duty positions, "refused to allow [Nathanson]

to return to work," and "consistently ignored [Nathanson]'s requests to return to work." *Id.* ¶¶ 19-

20. In April 2022, Nathanson's doctor informed him that he was at his "maximum level of

recovery" and could return to work. *Id.* ¶ 21. Nathanson alleges that Truebeck nevertheless

refused to allow him to return. *Id.* According to Nathanson, he was constructively or wrongfully

terminated on December 22, 2022, and the "pre-textual nature" of his termination is clear based on

his "prior explicit request(s) for reasonable accommodation, Defendant's failure to provide them,

and Plaintiff's forced leave from the company without pay." *Id.* ¶ 22.

### B.     Procedural History

Nathanson filed a complaint against Defendants in San Mateo County Superior Court on

April 3, 2023, alleging four claims under California's Fair Employment and Housing Act

("FEHA"), California Government Code section 12900 et seq.: 1) disability discrimination; 2)

failure to engage in an interactive process; 3) failure to provide reasonable accommodations; and

4) retaliation. Nathanson also brought claims for constructive/wrongful termination in violation of

public policy and intentional infliction of emotional distress ("IIED").[1] Truebeck removed the

action on May 5, 2023, asserting that this court has federal question jurisdiction pursuant to 28

U.S.C. § 1331 because Nathanson's claims require interpretation of a collective bargaining

agreement and are thus completely preempted by Section 301 of the LMRA, 20 U.S.C. § 185.

[Docket No. 1 (Notice of Removal) ¶¶ 5, 8.] Truebeck asserts that Nathanson's employment was

governed by a collective bargaining agreement at all relevant times. Notice of Removal ¶ 5; *see

also* Herman Decl. ¶ 3, Ex. 3 (2018-2023 Carpenters Master Agreement for Northern California

(the "CBA")).

## II.    LEGAL STANDARD

The federal district courts have original jurisdiction over "all civil actions arising under the

---

[1] In his motion, Plaintiff refers to an additional claim for negligent infliction of emotional distress ("NIED"). *See* Mot. at 8. The complaint does not allege a claim for NIED.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A civil action brought in

2    state court over which the federal district courts have original jurisdiction may be removed to the

3    federal district court for the district embracing the place where the action is pending. *See* 28

4    U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks

5    subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

6    　　　　"[T]he presence or absence of federal-question jurisdiction is governed by the 'well-

7    pleaded complaint rule,' which provides that in the absence of diversity jurisdiction, federal

8    jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly

9    pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quoting *Caterpillar,*

10   *Inc. v. Williams*, 482 U.S. 386, 392 (1987)). That rule applies equally to evaluating the existence

11   of federal questions in cases brought initially in federal court and in removed cases. *See Holmes*

12   *Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 n.2 (2002). Under the "well-

13   pleaded complaint rule," the plaintiff is the master of his or her claim, and "may avoid federal

14   jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392. The removing

15   defendant bears the burden of establishing that removal was proper. *Duncan v. Stuetzle*, 76 F.3d

16   1480, 1485 (9th Cir. 1996).

17   **III.    DISCUSSION**

18   　　　　Nathanson moves to remand the case to state court. He contends that his claims do not

19   require interpretation of the CBA and therefore are not preempted by Section 301 of the LMRA.[2]

20

21   [2] The parties dispute whether Nathanson's motion to remand was timely filed. The motion was
     filed on October 31, 2023. Truebeck contends the motion was untimely because it was filed after

22   a court-imposed deadline. [*See* Docket No. 11 (granting stipulation continuing deadline to file
     motion to remand from June 5, 2023 to July 5, 2023).] Nathanson responds that the motion was

23   nevertheless timely under 28 U.S.C. § 1447(c) because he seeks to remand this action for lack of
     subject-matter jurisdiction.

24
      Under section 1447(c), a motion to remand based on any defect other than subject-matter
25   jurisdiction must be made within thirty days after the filing of the notice of removal. This is
     because subject matter jurisdiction is fundamental and cannot be waived. *Billingsly v. C.I.R.*, 868

26   F.2d 1081, 1085 (9th Cir. 1989); *see also* 28 U.S.C. § 1447(c) ("If at any time before final
     judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

27   remanded.").

      Because Nathanson's motion advances a challenge to subject-matter jurisdiction, Truebeck's
28   timeliness argument is not well taken. *See Weaver v. Kruse*, No. 5:22-CV-07103 EJD, 2023 WL

1    Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts between

2  an employer and a labor organization."  29 U.S.C. § 185(a).  Section 301 "completely preempts

3  any state causes of action based on alleged violations of contracts between employers and labor

4  organizations."  *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993).

5  Usually, federal preemption is a defense that defendants cannot raise in order to remove state law

6  cases.  *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019).  However, section 301

7  "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law

8  complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  *Id.*

9  (quoting *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).  Labor claims may be subject to

10  preemption under section 301 "even in some instances in which the plaintiffs have not alleged a

11  breach of contract in their complaint, if the plaintiffs' claim is either grounded in the provisions of

12  the labor contract or requires interpretation of it."  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053,

13  1059 (9th Cir. 2007).  Thus, a state law claim is preempted "if the resolution of [that] claim

14  depends upon the meaning of a collective-bargaining agreement."  *Detabali v. St. Luke's Hosp.*,

15  482 F.3d 1199, 1203 (9th Cir. 2007) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S.

16  399, 405–06 (1988)).  "The plaintiff's claim is the touchstone for this analysis; the need to

17  interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim.  If

18  the claim is plainly based on state law, § 301 preemption is not mandated simply because the

19  defendant refers to the [collective bargaining agreement] in mounting a defense."  *Cramer v.*

20  *Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).

21    The Ninth Circuit uses a two-part analysis to determine whether a claim is preempted by

22  section 301.  First, the court inquires "whether the asserted cause of action involves a right

23  conferred upon an employee by virtue of state law, not by a CBA."  *Burnside*, 491 F.3d at 1059.

24  If the right "exists solely as a result of the CBA, then the claim is preempted, and [the] analysis

25  ends there."  *Id.*  If the right exists independently of the CBA, the court must then consider

26  whether "it is nevertheless substantially dependent on analysis of a collective-bargaining

27

28  2212983, at *3 (N.D. Cal. Feb. 24, 2023) (rejecting defendant's claim that plaintiff failed to timely
move for remand).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    agreement." *Id.* (quoting *Caterpillar*, 482 U.S. at 394).  "If such dependence exists, then the claim

2    is preempted by section 301." *Id.* at 1059-60.  But if the claim can be resolved by "looking to"

3    instead of "interpreting" the CBA, the claim is not preempted and can proceed under state law.  *Id.*

4    at 1060.

5    　　　　Here, Truebeck does not dispute that the rights asserted by Nathanson are conferred upon

6    employees by virtue of state law.  Therefore, the court focuses on the second part of the

7    preemption analysis, namely, whether Nathanson's claims are "substantially dependent on

8    analysis of a collective-bargaining agreement." *Burnside*, 491 F.3d 1059.

9    　　　　Truebeck does not differentiate between Nathanson's FEHA claims and his claims for

10   constructive/wrongful termination in violation of public policy and IIED.  In general, Truebeck

11   argues that Nathanson's employment, treatment, and discharge are governed by the CBA and thus

12   require interpretation of its provisions.  Opp'n at 3.  Truebeck relies primarily on the following

13   provisions:

14   　　　　　　　　DISCHARGED EMPLOYEE: Employees receiving notice of
     　　　　　　　　termination for any reason shall be allowed a reasonable time (not less
15   　　　　　　　　than fifteen (15) minutes) before the end of the regular work day to
     　　　　　　　　assemble their tools in addition to the normal pick-up time prevailing
16   　　　　　　　　on the job.

17   　　　　　　　　After forty (40) hours of employment, the individual employer may
     　　　　　　　　discharge any employee for just cause only. Just cause is subject to
18   　　　　　　　　Section 51, the grievance and arbitration provision of this Agreement.
     　　　　　　　　The individual employer during the first forty (40) hours of
19   　　　　　　　　employment may reject or discharge any employee for any reason.

20   　　　　　　　　Discharge for cause shall be in writing to the employee.

21   CBA at 18 (Section 30, Show Up Time, Termination Pay and Discharge).

22   　　　　　　　　An industrial injury shall not be cause for discharge and an applicant
     　　　　　　　　for employment shall not be rejected because of prior industrial
23   　　　　　　　　injury, provided that any such prior industrial injury has not caused
     　　　　　　　　the applicant to be incapable of satisfactorily performing the duties
24   　　　　　　　　and functions required by the job to which he/she is assigned or would
     　　　　　　　　be assigned.
25

26   *Id.* at 19 (Section 34, Injury).

27   　　　　　　　　On all cases relating to discharge or discipline, employees must file
     　　　　　　　　their grievances with the Local Union or the NCCRC within three (3)
28   　　　　　　　　working days after the imposition of the discharge or discipline.

1

2

3

4

5

6

> Thereafter, the Local Union or the NCCRC must file its grievance with the Board of Adjustment within four (4) working days after the employee files his/her grievance. The Board shall meet within seven (7) working days following submission of the grievance. The Board of Adjustment or Arbitrator shall be free to sustain the discharge or to find discipline other than discharge to be appropriate and may order reinstatement with full or partial back pay as he or it deems appropriate provided there shall be no discrimination on the part of the individual employer against any employee for activities on behalf of or representation of the Union not interfering with the proper performance of his/her duties.

7    *Id.* at 46-47 (Paragraph 16, Section 51, Grievance Procedure).  Truebeck does not explain how

8    these sections apply to Nathanson's claims, or why this action will require interpretation of any of

9    the cited provisions.  *See* Opp'n at 3 (quoting CBA provisions without further analysis); *see also*

10   *id.* at 5 (arguing in a conclusory way that "[t]he CBA expressly governs Plaintiff's employment,

11   treatment, and discharge, and claims regarding the same require consideration and analysis of the

12   terms of the CBA").

13          Contrary to Truebeck's assertions, the Ninth Circuit has "consistently held that state law

14   discrimination claims under the FEHA do not require courts to interpret the terms of a CBA and

15   are therefore not preempted by § 301." *Schrader v. Noll Mfg. Co.*, 91 Fed. App'x. 553, 555 (9th

16   Cir. 2004) (collecting cases); *see also Ramirez*, 998 F.2d at 748 ("[i]n every case in which we have

17   considered an action brought under [California's anti-discrimination statute], we have held that it

18   is not preempted by section 301," collecting cases).  "This is true even where the CBA closely

19   regulates the conduct that the plaintiff claims to be discriminatory." *Schrader*, 91 Fed. App'x. at

20   555.

21          While it is possible that the parties will refer to the CBA during the course of the litigation,

22   it will not be necessary to interpret its terms to adjudicate Nathanson's claims because "they turn

23   on the defendants' motives, rather than their contractual rights." *Schrader*, 91 Fed. App'x. at 555.

24   Truebeck does not identify a claim that encompasses a dispute about the meaning of a CBA

25   provision, and Nathanson's claims do not on their face require interpretation of the CBA.  *See*

26   *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) ("'Interpretation' is construed

27   narrowly; 'it means something more than 'consider,' 'refer to,' or 'apply'" (quoting *Balcorta v.*

28   *Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000))).  The fact that Truebeck

United States District Court
Northern District of California

6

1    may refer to the terms of the CBA to defend itself does not change the result, because "[a] defense

2    based on the CBA is alone insufficient to require preemption."  *Ward v. Circus Circus Casinos,*

3    *Inc.*, 473 F.3d 994, 998 (9th Cir. 2007).  Instead, "the need to interpret the CBA must inhere in the

4    nature of the plaintiff's claim."  *Cramer*, 255 F.3d at 691.

5           Truebeck also fails to satisfy its burden of establishing that removal of the remaining

6    claims was proper.  *See Duncan*, 76 F.3d at 1485.  Nathanson's claim for constructive/wrongful

7    termination in violation of public policy is "based upon [his] FEHA claims."  *See* Mot. at 6.

8    Absent any meaningful argument to the contrary, the complaint suggests that Nathanson's claim

9    for constructive/wrongful termination in violation of public policy is independent of the CBA and

10   is thus not preempted by the LMRA.  *See, e.g.*, *Williams v. Lockheed Martin Space Operations*

11   *Co.*, No. C-05-05210 RMW, 2006 WL 1329889, at *6 (N.D. Cal. May 16, 2006) ("Assuming [the

12   plaintiff]'s wrongful termination claim is based on FEHA, there is a sufficiently clear California

13   standard for considering it without looking to the CBA").

14          Nathanson's IIED claim also arises from the same circumstances as his FEHA claims.  *See*

15   Complaint ¶ 57 ("When the Defendants committed the acts described above [i.e., the facts

16   underlying Nathanson's FEHA claims], it did so deliberately and intentionally to cause Plaintiff to

17   suffer humiliation, mental anguish, and emotional distress"); *see also* Mot. at 8 (asserting that

18   Plaintiff's IIED claim "arise[s] only from facts supporting his FEHA claims for discrimination,

19   retaliation and wrongful termination").

20          In general, "[w]hen the CBA governs the behavior, and the underlying claims are

21   preempted, the IIED claims relying upon them are also preempted . . .  In contrast, when the

22   underlying claims are not preempted, neither are the claims for IIED."  *Lee v. Eden Med. Ctr.*, 690

23   F. Supp. 2d 1011, 1021 (N.D. Cal. 2010) (citing *Cook v. Lindsay Olive Growers,* 911 F.2d 233,

24   239-40 (9th Cir. 1990); *Tellez v. Pac. Gas and Elec. Co., Inc.*, 817 F.2d 536, 538–39 (9th Cir.

25   1987)).

26          Truebeck does not specifically address Nathanson's IIED claim and thus fails to carry its

27   burden of demonstrating that removal is proper.  In addition, because Nathanson's IIED claim

28   appears to rest primarily on his allegations of disability discrimination, the court finds that the

United States District Court
Northern District of California

7

1  claim is not preempted by section 301.  *See Lee*, 690 F. Supp. 2d at 1021 ("to the extent that

2  Plaintiff's IIED claim rests on discrimination, it is not preempted [by the LMRA]"); *see also*

3  *Martinez v. Kaiser Found. Hosps.*, No. C-12-1824 EMC, 2012 WL 2598165, at *6 (N.D. Cal. July

4  5, 2012) (finding that claim for intentional infliction of emotional distress based on discrimination

5  was not preempted because the focus of the plaintiff's claim was on discriminatory treatment

6  rather than the substantive provisions of the CBA).

7      In sum, the court concludes that section 301 does not preempt Nathanson's claims and

8  removal is improper.

9  **IV.   CONCLUSION**

10      For the foregoing reasons, Nathanson's motion to remand this matter to the Superior Court

11  of the State of California, County of San Mateo is granted.

12      **IT IS SO ORDERED.**

13  Dated: January 5, 2024

14  _____

15          Donna M. Ryu
        Chief Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28